UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAYLOR RAE ROSENBUSCH, <br> TDCJ No. 019011159, <br><br> Petitioner, <br><br> v. <br><br> LORIE DAVIS, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § § § | CIVIL NO. SA-18-CA-00371-FB |

## MEMORANDUM OPINION AND ORDER

Taylor Rosenbusch, an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ–CID"), has filed a counseled application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the sentences imposed pursuant to her conviction on two charges of intoxication manslaughter. Having considered the petition (ECF No. 1), the respondent's answer (ECF No. 7), Ms. Rosenbusch's reply (ECF No. 11), the record (ECF Nos. 8 & 9), and applicable law, the Court finds the petition should be **DENIED**.

### I. Factual Background

The Director has lawful custody of Ms. Rosenbusch pursuant to a judgment and sentence of the 226th District Court of Bexar County, Texas. Ms. Rosenbusch was charged in each of two separate cause numbers with one count of intoxication manslaughter and one count of manslaughter, and the indictments further alleged the use of a deadly weapon in the commission of the offense. (ECF No. 8-11 at 12-13; ECF No. 9-20 at 6).

Ms. Rosenbusch, who was then 19 years of age, (ECF No. 8-11 at 38), was driving the wrong way on an interstate highway at 4 a.m. after consuming beer, mixed drinks, shots of tequila, and "homemade . . . something" at a party, when she collided with another vehicle, killing the driver and his passenger. *Rosenbusch v. State*, No. 04–14–00050–CR, 2015 WL 5964995, at *1 (Tex. App.–San Antonio 2016, pet. ref'd); ECF No. 8-16 at 183-86; ECF No. 9-7 at 42. Ms. "Rosenbusch's blood alcohol concentration approximately one hour after the crash was .26, and her blood alcohol concentration approximately two and a half hours after the crash was .18." *Rosenbusch*, 2015 WL 5964995, at *1. Ms. Rosenbusch was represented by retained counsel and was released on bond pending trial. (ECF No. 8-11 at 5, 9-11).

After the jury was selected, Ms. Rosenbusch decided to enter open guilty pleas to the charges of intoxication manslaughter, but pleaded not true to the allegation she used a deadly weapon in the commission of the crimes.[1] (ECF No. 8-15 at 3, 9-11). In return for Ms. Rosenbusch's guilty pleas the State "waived and abandoned" the charges of manslaughter. (ECF No. 9-4 at 2-3).

At her sentencing hearing before a jury, Ms. Rosenbusch stated that she wanted to "tell her story to try to help other people." (ECF No. 8-16 at 195).

> When asked on cross examination if [Ms. Rosenbusch] believed it would be more effective at the end of that story to tell people that she got probation or she got sent to prison, Applicant responded, "Why take another life away?" RR5 197. When asked if she would be willing to serve 20 years if it would give the victims' families peace of mind, and she answered "No."

(ECF No. 9-20 at 120).

---

[1] "A judge cannot give probation to a defendant on a guilty plea where it is shown that a deadly weapon was used or exhibited in the offense . . ." *Guevara v. State*, No. 14-16-00701-CR, 2018 WL 771218, at *6 (Tex. App.–Houston 2018, pet. ref'd); *see also Martinez v. State*, 883 S.W.2d 771, 773 (Tex. App.–Ft. Worth 1994, pet. ref'd).

The defense argued for a sentence of probation (ECF No. 9-7 at 49), while the prosecution asked for a sentence of 20 years. (ECF No. 9-7 at 62). The prosecution noted in closing argument that Ms. Rosenbusch had continued to drink for two years after the accident until finally entering rehab before her trial. (ECF No. 9-7 at 67-68). After hearing three days of evidence, and after approximately five hours of deliberation, (ECF No. 9-7 at 70-72), the jury assessed a sentence of twelve years' imprisonment for each offense and found the deadly weapon allegations true. (ECF No. 9-7 at 74-75). During deliberation, the jury sent a note asking if the sentences would be served concurrently or consecutively, to which the trial court replied it was "not permitted to respond" to the question. (ECF No. 9-7 at 71). After the jury returned its verdict, the prosecution immediately moved to cumulate the sentences. After hearing argument on the motion (which the defense was prepared to present), the trial court granted the motion to cumulate the sentences. (ECF No. 9-7 at 77-79).

Ms. Rosenbusch moved for reconsideration of her sentence or a new trial on punishment, which was denied by operation of law. (ECF No. 8-11 at 37-46). Ms. Rosenbusch appealed her sentence, asserting:

> (1) the trial court's failure to admonish her regarding the possible cumulation of her sentences violated her due process rights and caused her plea to be involuntary; (2) article 42.08 of the Texas Code of Criminal Procedure is unconstitutional in allowing the trial court to cumulate sentences without any standards or controls; (3) the trial court erred in not including an instruction in the jury charge regarding its discretion to cumulate sentences; and (4) the trial court erred in allowing the jury to view a recreation of the automobile collision.

*Rosenbusch*, 2015 WL 5964995, at *1. The Fourth Court of Appeals overruled her issues and affirmed the trial court's judgment. *Id.*

Ms. Rosenbusch, through counsel, sought a state writ of habeas corpus. (ECF No. 9-20 at 5-22). She again alleged her guilty plea was involuntary because she was not informed of the possibility of consecutive sentences. (ECF No. 9-20 at 10). She further asserted she was denied the effective assistance of counsel because her counsel did not inform her she could receive consecutive sentences, and because counsel was ineffective "in connection with the decision regarding whether to seek a plea bargain because she was not told that she could be subject to consecutive or cumulative sentences." (ECF No. 9-20 at 12, 14).

Attached to Ms. Rosenbusch's writ application was the affidavit of her trial counsel, stating:

> I recall informing [Ms. Rosenbusch] that the range of punishment was a term of confinement from two to twenty years and a fine of $10,000.00. I do not recall having told her that there was a possibility of the cumulation or stacking of sentences which could expose her to a possible total effective sentence of up to forty years.

(ECF No. 9-20 at 61). Ms. Rosenbusch also supplied the affidavit of her step-father, who stated counsel had informed Ms. Rosenbusch and her parents that "there was a possibility of a plea bargain agreement that would involve a sentence of fifteen years. . . . Under the circumstances, Taylor decided to present her case to the jury." (ECF No. 9-20 at 68).

The habeas trial court designated issues for resolution and ordered counsel to file an affidavit addressing whether his client ever indicated "a willingness to accept a plea bargain or did [she] want a trial?" (ECF No. 9-20 at 111). Counsel was also ordered to state whether his client had expressed acceptable "parameters" with regard to a plea offer. (*Id.*). In response, counsel averred he and Ms. Rosenbusch did not discuss whether she would have accepted a plea agreement had she known her sentences could be stacked if she went to trial on punishment. (ECF No. 9-20 at 114). Counsel affirmed that Ms. Rosenbusch refused a plea agreement

providing she would receive a sentence of 15 years' imprisonment in each case, with the sentences to be served concurrently. (ECF No. 9-20 at 114-15). Counsel further stated:

> Applicant expressed to me a willingness to accept a plea bargain if it was a fair offer. Applicant was always prepared to accept responsibility for her crime. She never insisted on a trial, but agreed to a trial on punishment, as she expressed she felt she was left with no practical option.
> . . . because of numerous mitigating factors which led to the accident, *she wanted to contest receiving a severe punishment of fifteen or more years in prison*.

(ECF No. 9-20 at 115-16) (emphasis added).

The habeas trial court, which was also the sentencing court, made findings of fact and recommended the writ be denied. (ECF No. 9-20 at 119-26). The Court of Criminal Appeals denied the writ without written order. (ECF No. 9-19).

In her federal habeas petition, Ms. Rosenbusch asserts:

1. Her guilty plea was involuntary because she did not know her sentences could be cumulated;

2. She was denied her right to the effective assistance of counsel when entering her guilty plea because her counsel did not inform her the sentences might be cumulated;

3. Counsel was ineffective "in connection with the decision regarding whether to seek a plea bargain because she was not told that she could be subject to consecutive or cumulative sentences." (ECF No. 1 at 16-17).

## II. Standard of Review

### A. Review of State Court Adjudications

Ms. Rosenbusch's habeas petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. Under section 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). The clearly established federal law clause refers to the holdings, rather than the dicta, of the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). And "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion. *Richter*, 562 U.S. at 102. Instead, a petitioner must show the state court's decision was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough*, 541 U.S. at 664). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, a petitioner

must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

**B.      Review of Sixth Amendment Claims**

The Court reviews Sixth Amendment claims of ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a petitioner must demonstrate counsel's performance was deficient and the deficiency prejudiced the defense. *Id.* at 687-88, 690. When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A habeas petitioner has the burden to prove both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009); *Wiggins*, 539 U.S. at 548 (2003); *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009).

### III. Analysis

**1. Voluntariness of guilty pleas**

Ms. Rosenbusch contends her guilty pleas were involuntary because she was not informed that her sentences could be cumulated. She raised this claim in her appeal, and relief was denied. The appellate court concluded "the imposition of consecutive sentences is a

collateral consequence of a guilty plea, and the failure to warn of this possibility does not render the plea involuntary in violation of the defendant's due process rights." *Rosenbusch*, 2015 WL 5964995, at *2 (internal quotations omitted). The Court of Criminal Appeals summarily denied discretionary review of this decision. Because the Court of Criminal Appeals' decision denying relief was unexplained, the Court must "look through" the Court of Criminal Appeals' unexplained decision to the Court of Appeals' "relevant rationale" for the denial of the claim, presuming the higher court "adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Uranga v. Davis*, 83 F.3d 282, 287 n.33 (5th Cir. 2018).

The state court's denial of relief on this claim was not clearly contrary to or an unreasonable application of the clearly established federal law, which is stated in *Brady v. United States*, 397 U.S. 742, 755 (1970). The *Brady* court held that, "in order to plead voluntarily, a defendant must know the *direct* consequences of his plea . . ." *Id.* (internal quotations omitted and emphasis added). The Supreme Court has not defined which consequences of a guilty plea are direct and which are collateral. The Circuit Courts of Appeal have determined that direct consequences are those that have a "definite, immediate and largely *automatic* effect on the range of the defendant's punishment." *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (emphasis added and internal quotations omitted); s*ee also Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008); *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006); *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004); *United States v. Hurlich*, 293 F.3d 1223, 1231 (10th Cir. 2002); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990); *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984); *Bryant v. Cherry*, 687 F.2d 48, 49-50 (4th Cir. 1982). Because the imposition of consecutive sentences is a matter within the trial court's

discretion, it is not definite or "largely automatic" and, accordingly, not a direct consequence of a guilty plea which must be known to a defendant for their plea to be considered voluntary.

And there is no Supreme Court opinion holding that the cumulation of sentences is a direct consequence of a guilty plea that must be communicated to a criminal defendant for the plea to be considered knowing and voluntary. "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough*, 541 U.S. at 666). If there can be "'fairminded disagreement'" on the question, as in this matter, the state court's decision must be affirmed. *Id.* at 427 (quoting *Richter*, 562 U.S. at 101). Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of federal law as established by the Supreme Court at the time of the state court decision, and the claim must be denied.

**B.     Ineffective assistance of counsel**

**1. Failure to inform**

Ms. Rosenbusch asserts she was denied the effective assistance of counsel because her attorney did not advise her that her sentences could be cumulated. She raised this claim in her state habeas action, and relief was denied.

In denying relief, the habeas trial court, which was also the convicting court, determined that Ms. Rosenbusch was not prejudiced by her counsel's alleged error because it concluded that, even if Ms. Rosenbusch had known her sentences might be stacked, she would not have accepted the proffered plea deal:

> During trial, Applicant's testimony was a clear attempt to convince the jury to sentence her to probation. Applicant made it apparent to this Court and to the jury that she had absolutely no intention of serving any sort of jail time for this

offense. Conversely, Applicant asserts both in her affidavit and in her brief in support of her application that she would have served jail time, and would have proceeded with the plea bargain to serve 15 years in TDCJ had she known about the possibility of consecutive sentences. There is an inherent contradiction between Applicant's assertions in her affidavit in support of this application. This Court finds that Applicant's new affidavit is not credible, and that Applicant cannot meet her burden under the second prong of *Ex parte Morrow*[2] given these circumstances. For those reasons, the Court finds that Applicant's second and third grounds for relief [alleging ineffective assistance of counsel] should be denied.

(ECF No. 9-20 at 124-25). The state habeas court's findings, including its credibility determinations, are entitled to a presumption of correctness unless they are not fairly supported by the record, and may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013). The presumption afforded factual findings is even stronger when, as in this matter, the state habeas judge making the findings is also the convicting court. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

Counsel's failure to advise a defendant of the collateral consequences of a guilty plea is not per se ineffective assistance of counsel. *United States v. Castro*, 26 F.3d 557, 560 (5th Cir. 1994); *Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992). At best, one federal court has noted that counsel's failure to inform their client about their sentencing exposure *may* constitute ineffective assistance of counsel. *See Jenkins v. Greene*, 630 F.3d 298, 309 (2d Cir. 2010) (finding habeas petition time-barred but noting counsel failed to accurately inform the defendant of their sentencing exposure). Ms. Rosenbusch cites no United States Supreme Court opinion holding that counsel's failure to advise the defendant that their sentences might be stacked if they proceeded to trial constituted ineffective assistance of counsel. Furthermore, the habeas trial

---

[2] The second prong of the test for ineffective assistance stated in *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997), mirrors the prejudice prong of the *Strickland* test.

court's finding, that Ms. Rosenbusch would not have accepted the proffered plea bargain even had she known the jury's sentences could be cumulated, is entitled to deference because it is supported by the record and it has not been rebutted by clear and convincing evidence. The transcript of the sentencing hearing indicates there was no reasonable probability Ms. Rosenbusch would have accepted a 15-year sentence when she apparently firmly believed the only "fair" sentence for her crimes was community supervision.

### 2. Erroneous legal advice

Ms. Rosenbusch contends her counsel was ineffective "in connection with the decision regarding whether to seek a plea bargain because she was not told that she could be subject to consecutive or cumulative sentences." (ECF No. 1 at 16-17). Ms. Rosenbusch alleges she did not accept the State's offer of 15 year's imprisonment "because she was not advised regarding the possibility of cumulative sentences," implying she would have accepted the proffered plea bargain had she known the jury's sentences could be cumulated. (ECF No. 1 at 17). She contends her rejection of the plea offer was predicated on "erroneous legal advice," citing *Lafler v. Cooper*, 566 U.S. 156 (2012). (ECF No. 1 at 18). Ms. Rosenbusch presented this claim in her state habeas action, and relief was denied.

Ms. Rosenbusch does not cite any United States Supreme Court opinion holding that counsel's failure to advise their client that the jury's sentences could be cumulated was deficient performance. *Lafler* is not on point; in *Lafler* the parties agreed counsel's advice to proceed to a trial on the issue of guilt rather than accept a plea agreement was unconstitutionally deficient because counsel misapprehended the applicable law. *See* 566 U.S. at 173.

Additionally, the Court notes counsel apparently did "seek a plea bargain," and the State offered Ms. Rosenbusch a deal providing for an aggregate sentence of 15 years' imprisonment,

presumably with a requirement that she plead true to the allegation that a deadly weapon was used in the commission of the offense. Furthermore, defense counsel's sworn affidavit in the state habeas matter states he did not "recall" whether he advised Ms. Rosenbusch that the trial court could cumulate whatever sentences were assessed by the jury. The Court notes counsel does not unequivocally state that he failed to advise Ms. Rosenbusch her sentences could be cumulated.

The Court finds it improbable that experienced trial counsel did not explain the plea offer was advantageous, i.e., that the plea offer involved concurrent sentences and that the sentences assessed by the jury could be cumulated. Furthermore, counsel was obviously prepared to argue against the cumulation of the sentences when the trial court granted the prosecution's motion to do so, indicating counsel had considered this possibility and quite likely discussed it with Ms. Rosenbusch. Ms. Rosenbusch offers only her own self-serving statement that she was not advised her sentences could be cumulated and that, but for her counsel's "failure" to advise her of this possibility she would have accepted the plea offer. Deferring to the state court's findings in this regard, the state court having witnessed counsel's performance and Ms. Rosenbusch's statements regarding her culpability and her desire to avoid a sentence involving any term of imprisonment, this Court concludes the state court's denial of this claim was not an objectively unreasonable application of *Strickland*.

### III. Certificate of Appealability

The Court next determines whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district

court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA sua sponte without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes reasonable jurists would not debate the conclusion that Ms. Rosenbusch is not entitled to federal habeas relief. As such, a COA will not issue.

## IV. Conclusion and Order

Accordingly, based on the foregoing reasons,

**IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and petitioner Taylor Rosenbusch's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**;

2. No Certificate of Appealability shall issue in this case;

3. Any other pending motions pending are **DENIED**, and this case is now **CLOSED**.

It is so ORDERED.

SIGNED this 30th day of September, 2018.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE